**MAY, POTENZA, BARAN & GILLESPIE, P.C.**
201 North Central Avenue, 22nd Floor
Phoenix, Arizona  85004-0608
Telephone:  (602) 252-1900
Facsimile:  (602) 252-1114
Jason M. Covault – SBN 025425
Jesse R. Callahan – SBN 025393
Michelle L. Mozdzen – SBN 028188
E-mail: jcovault@maypotenza.com
          jcallahan@maypotenza.com
          mmozdzen@maypotenza.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BLOOM MASTER FUND I, LLC, a Delaware limited liability corporation, | Case No. 2:21-cv-01116-DJH |
| Plaintiff, | **VERIFIED FIRST AMENDED COMPLAINT** |
| vs. | |
| CAPNA INTELLECTUAL, INC., a California corporation, and TIERRA GROW MANAGEMENT, LLC, an Arizona limited liability corporation, | (Tier 3) |
| Defendants. | |

Plaintiff Bloom Master Fund I, LLC, ("Bloom") by and through its attorneys, for its First Amended Complaint against Defendants Capna Intellectual, Inc., and Tierra Grow Management, LLC, (collectively "Defendants"), alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1.     This is an action for infringement of Bloom's trademark BLOOM, for unfair competition and false designation of origin, and for substantial and related claims of trademark infringement under the statutory and common laws of the State of Arizona, all arising from the Defendants' unauthorized use of the mark "BLOOM" in connection with the manufacture, distribution, marketing,

advertising, promotion, offering for sale, and/or sale of Defendants' marijuana and cannabis products containing THC (tetrahydrocannabinol), including cannabis concentrates, cartridges, and oils, in Arizona.

2.     Bloom seeks injunctive and monetary relief.

**PARTIES, VENUE, AND JURISDICTION**

3.     Plaintiff Bloom is a Delaware limited liability company with its principal place of business in Maricopa County, Arizona, and that is authorized to do business in Arizona.

4.     Plaintiff Bloom has three members.

5.     The majority member (greater than 75%) of Bloom is a Delaware limited liability company that is wholly owned by an individual who is an Arizona citizen, and who is domiciled in Arizona.

6.     Defendant Capna Intellectual, Inc. is a California corporation doing business in Maricopa County, Arizona.

7.     Defendant Tierra Grow Management, LLC is an Arizona limited liability corporation with its principal place of business in Maricopa County, Arizona.

8.     There is no complete diversity jurisdiction in this lawsuit (and was no complete diversity jurisdiction at the time the original Verified Complaint was filed) because the individual who entirely owns and controls the Delaware LLC that is the majority member of Bloom is an Arizona citizen.  Defendant Tierra Grow Management LLC is an Arizona limited liability company that, on information and belief, is owned and controlled by Arizona members and citizens at the time of this filing.

9.     There is no longer federal question jurisdiction in this lawsuit because Plaintiff Bloom filed this First Amended Complaint, as a matter of right, removing its allegations and claims regarding questions of federal law, including its Lanham Act and Federal Trademark claims.

2

10.     This Court has the discretion, but not the obligation, to exercise pendant jurisdiction regarding the remaining claims based upon Arizona's laws and the Arizona Constitution pertaining to the manufacture, distribution, marketing, advertising, promotion, offering for sale, and/or sale of marijuana and cannabis products containing THC (tetrahydrocannabinol), including cannabis concentrates, cannabis cartridges, and marijuana flower.

## FACTS

### A.     Plaintiff Bloom and the BLOOM Mark

11.     Plaintiff Bloom is the owner of the valid trademark BLOOM, as described and explained further below, in Arizona commerce for use with cannabis products and/or marijuana products containing THC.

12.     THC is the primary psychoactive compound in cannabis that produces a euphoric sensation caused by the compound interacting with the human endocannabinoid system.

13.     Bloom does not manufacture, distribute, market, advertise, promote, offer for sale, and/or sell any hemp products.

14.     Bloom does not manufacture, distribute, market, advertise, promote, offer for sale, and/or sell any vaporizers or batteries that are used for marijuana products under the names Bloom, BLOOM, or The Bloom.

15.     Plaintiff and its parents, subsidiaries, and affiliated entities, own, manage, and operate several dual license marijuana facilities (including medical marijuana dispensaries prior to January 19, 2021, and now medical and adult-use marijuana dispensaries) throughout Arizona, including dispensaries in Phoenix, Peoria, Tucson, and Sedona.

16.     Plaintiff Bloom has used the BLOOM Mark in commerce throughout the state of Arizona continuously since its formation in 2013 in connection with the manufacture, provision, offering for sale, sale, marketing, advertising, and promotion of cannabis products. Attached hereto as **Exhibit 1** are copies of

representative samples of cannabis products showing Bloom's use of the BLOOM Mark in connection with these goods.

17.   After its formation in 2013, Plaintiff Bloom began producing and selling cannabis products using the BLOOM Mark at its own dispensaries, including and in other dispensaries throughout Arizona.

18.   Plaintiff Bloom has registered with the Arizona Secretary of State the following standard character trademarks for cannabis products:

- BLOOM
- BLOOM CANNABIS
- BLOOM DISPENSARY
- BLOOM DISPENSARIES

19.   The registration number for the BLOOM standard character mark is 9228756.

20.   The registration number for the BLOOM CANNABIS standard character mark is 9228764.

21.   The registration number for the BLOOM DISPENSARY standard character mark is 9228767.

22.   The registration number for the BLOOM DISPENSARIES standard character mark is 9228769.

23.   Plaintiff Bloom has registered with the Arizona Secretary of State the following special character trademarks for cannabis products:

- BLOOM
- BLOOM CANNABIS
- BLOOM DISPENSARY
- BLOOM DISPENSARIES

24.   The registration number for the BLOOM special character mark is 9228480.

25.    The registration number for the BLOOM CANNABIS special character mark is 9228482.

26.    The registration number for the BLOOM DISPENSARY special character mark is 9228485.

27.    The registration number for the BLOOM DISPENSARIES special character mark is 9228484.

28.    The special character marks consist of the literal element "bloom" in lower-case letters. The marks that include additional terms (i.e., DISPENSARY, DISPENSARIES, CANNABIS), such word appears below the word "bloom" justified with the right margin of the word "bloom."  In each mark, the double 'o' in "bloom" is depicted as an orange lemniscate, and the remaining words in the mark are in black lower case letters.  A lemniscate is a geometric shape most commonly known for its use as the mathematical symbol representing the concept of infinity. The shape is, in essence, a figure eight, whereby two symmetric hoops intersect at a central point.

29.    Bloom's registration of these particular trademarks and special character marks (collectively, the "BLOOM Family of Marks," or the "BLOOM Marks") creates a presumption of registrability, including a presumption that these trademarks are at least suggestive and not merely descriptive.

30.    Over the following years, Bloom has used the BLOOM name not only for the name of its dispensaries located throughout Arizona, but also uses the BLOOM name to market, advertise, and sell its cannabis and cannabis products that are sold at dispensaries in Arizona.

31.    As a result of its widespread, continuous, and exclusive use of the BLOOM Marks to identify its cannabis products in Arizona and Bloom as their source, Bloom owns valid and subsisting common law rights to the BLOOM Marks in Arizona.

32.     The public has come to recognize the BLOOM Marks and now associates them with Bloom and Bloom's associated dispensaries and its cannabis products.  As a result, the BLOOM Marks have become distinctive to both the consuming public and Bloom's trade.

33.     Bloom has expended substantial time, money, and resources marketing, advertising, and promoting the marijuana and cannabis goods sold under the BLOOM Marks in Arizona, including through social media platforms, paid online media marketing campaigns, direct consumer texting, outdoor advertising, printed distributions and advertising, industry events, charity/volunteer work, branded "swag" and clothing articles, and it has established a valuable reputation in connection therewith in Arizona.

34.     Bloom distributes and sells cannabis products under the BLOOM Marks in dispensary locations throughout Arizona, and also through online sales via Bloom's own website as well as third-party ordering sites for sales in Arizona.

35.     Bloom offers and sells its cannabis products in Arizona under the BLOOM Marks to medical marijuana patients and consumers, and, as of January 2021, recreational marijuana consumers as well.

36.     As a result of Bloom's expenditures and efforts, the BLOOM Marks have come to signify the high quality of the cannabis products designated by the BLOOM Marks in Arizona, and acquired incalculable distinction, reputation, and goodwill belonging exclusively to Bloom.

37.     Bloom's BLOOM Marks and the cannabis products offered thereunder in Arizona have received significant unsolicited coverage in various media, including being awarded the Phoenix New Times "Best Medical Marijuana Dispensary" in 2017, featured in the October 2013 Dispensary Review: Bloom in Phoenix; on ThisIsTucson.com's community website, and on various news segments produced by Channel 5 News and Phoenix's CBS News affiliate throughout the years.

1    **B.    Defendants' Unlawful Activities**

2    38.    Defendants are engaged in the sale of cannabis products in Arizona,

3    including cannabis cartridges.

4    39.    Cannabis cartridges are different from vaporizers or batteries.

5    Vaporizers and batteries are not cannabis products and do not contain any THC.

6    40.    Cannabis cartridges must be attached to vaporizers so their contents

7    can be ingested.

8    41.    Without Bloom's authorization, and upon information and belief,

9    beginning long after Bloom acquired protectable exclusive rights in its BLOOM

10   Marks, Defendants adopted and began using a mark substantially identical to

11   Bloom's BLOOM Marks (hereinafter, the "Infringing Mark") in Arizona

12   commerce for cannabis cartridges.

13   42.    The Infringing Mark adopted and used by Defendants for cannabis

14   cartridges is identical to the literal component of Bloom's Mark, the word

15   "bloom," and the graphic elements are confusingly similar to Bloom's BLOOM

16   Mark.

17   43.    One of the most recognizable graphic features of Bloom's stylized

18   Marks is the depiction of the double 'o' in the word "bloom," appearing as a

19   lemniscate.

20   44.    Defendants' Infringing Mark on cannabis cartridges utilizes a

21   confusingly similar graphic element for the double 'o' in the word "bloom," which

22   is depicted as two intersecting symmetric hoops.

23   45.    When Defendants' Infringing Mark appears in color, the double 'o' in

24   the word "bloom" appears in red, and the remaining letters in black.

25   46.    Defendants have been engaged in the distribution, advertising,

26   promotion, offering for sale, and sale of cannabis cartridges, and on information

27   and belief other cannabis products using the Infringing Mark in Arizona.

28   Attached hereto as **Exhibit 2** are copies of emails received by Bloom suggesting

that the Arizona consuming public has confused Bloom's BLOOM Mark with Defendants' Infringing Mark. Defendants' Infringing Mark in **Exhibit 2** appears on vaporizers.

47.     The cannabis products Defendants have distributed, marketed, advertised, promoted, offered for sale, and sold under the Infringing Mark are of the same class of cannabis goods sold by Bloom in Arizona.

48.     Defendants have distributed, marketed, advertised, promoted, offered for sale, and sold their cannabis products in Arizona under the Infringing Mark through trade channels identical to those utilized by Bloom in Arizona.

49.     Defendants have marketed, advertised, and promoted their cannabis products in Arizona under the Infringing Mark through marketing, advertising, and promotional channels identical to those utilized by Bloom in Arizona.

50.     Defendants offer and sell their cannabis products under the Infringing Mark in Arizona to the same types of consumers to whom goods are offered and sold under the BLOOM Marks by Bloom in Arizona.

51.     Upon information and belief, the cannabis products Defendants offer under the Infringing Mark in Arizona are not of the same quality, and/or are not subject to the same standards or quality control as Bloom's products.

52.     On January 19, 2021, Bloom sent a cease and desist letter to Defendants objecting to Defendants' use of the Infringing Mark. Attached hereto as **Exhibit 3** is a true and correct copy of Bloom's January 19, 2021 cease and desist letter to Defendants.

53.     Bloom has received information from various marijuana dispensaries that Defendants are now selling their cannabis products in Arizona under the Infringing Mark.

54.     Bloom has received information that Arizona customers have been confused by Defendants' sale of cannabis products under the Infringing Mark and that the Arizona customers believed that Defendants' cannabis products

marketed for sale and sold under the Infringing Mark were Bloom's cannabis products.

55.     Defendants' infringing acts, as alleged herein, have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public in Arizona as to the source or origin of the Defendants' cannabis products and have deceived and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' cannabis products originate from, are associated or affiliated with, or otherwise authorized by Bloom.

56.     Defendants' infringing acts, as alleged herein, have resulted in actual confusion as evidenced by dispensary employees contacting Bloom about Bloom's "new" products they have seen in their stores.  The products in question were manufactured by Defendants and were marketed for sale and sold under the Infringing Mark, rather than the BLOOM Marks.

57.     Upon information and belief, Defendants' acts are willful, with the deliberate intent to trade on the goodwill of Bloom's BLOOM Marks, cause confusion and deception in the marketplace in Arizona, and divert potential sales of Bloom's cannabis products to the Defendants.

58.     On July 1, 2021, shortly before 12:00pm, Defendants filed their Response to Application for Temporary Restraining Order ("Response")[1] pursuant to this Court's order.

59.     In the Response, Defendants stated, "Capna has federal trademark rights in the word 'BLOOM' for electric vaporizers—the only type of product it sells or authorizes in Arizona—dating back to 2012."

---

[1] Defendant Tierra Grow Management, LLC filed Defendant Tierra Grow Management, LLC's Joinder in Defendant Capna Intellectual, Inc.'s Response to Plaintiff's Application for Temporary Restraining Order, "incorporate[ing] by reference all portions of Capna's response, and jointly request[ing] that the Court deny Plaintiff's request for temporary restraining order or other injunctive relief."

60.     On July 1, 2021 at 1:36pm, a representative of Bloom went to the Sunday Goods dispensary, located at 1616 E. Glendale Ave, Phoenix, AZ 85020, and purchased three cannabis cartridges made from the cannabis strains King Louis XIII, Maui Wowie, and Pineapple Express.

61.     **Exhibit 4** shows a display card positioned in front of the cannabis cartridge labeled with the Defendants' Infringing Mark.  On the display card, directly under the Infringing Mark appears the word "Arizona."

62.     The display card in **Exhibit 4** states, "Bloom Distillate Cartridge An experience that is as close to the plant as possible."

63.     Attached as **Exhibit 5** is a picture of the sealed package of three cannabis cartridges bearing Defendants' Infringing Mark that were purchased by Plaintiff Bloom's representative.  The package is sealed in a child resistant zip lock bag.  The staple connects the package to the receipt bearing the location, date and time, strains, and price of the cannabis cartridges, which clearly states "BLOOM" above each of the strains.

64.     Attached as **Exhibit 6** is a picture of the three cannabis cartridges, each of which clearly bears Defendants' Infringing Mark, that Plaintiff's representative removed from the package, sitting on top of the package.

65.     **Exhibits 4 - 6** demonstrate that cannabis cartridges bearing the Infringing Mark are being marketed and sold in Arizona, contrary to Defendant Capna's assertion in the Response that "electric vaporizers" are the "only type of product it sells or authorizes in Arizona."

66.     Attached as **Exhibit 7** is a screenshot of the website "thebloombrands.com/bloom-vape/#pineapple-express".  Defendants' cannabis cartridges bear the same Infringing Mark as **Exhibits 4 - 6**.

67.     Attached as **Exhibit 8** are four screenshots from the website www.leafly.com showing Defendants' cannabis cartridges with Defendants'

Infringing Mark, stating that such products are also found at "The Superior Dispensary (Med/Rec) located 6.0 miles away - Phoenix, AZ".

68.    Attached as **Exhibit 9** are two screenshots of maps from google.com showing that the Sunday Goods dispensary is located 9.3 miles from the Sandra Day O'Connor United States Courthouse, and that The Superior Dispensary is located 6.5 miles from the Sandra Day O'Connor United States Courthouse.

69.    Defendants' acts are causing, and unless restrained, will continue to cause, damage and immediate irreparable harm to Bloom and to its valuable reputation and goodwill with the consuming public in Arizona for which Bloom has no adequate remedy at law.

## COUNT ONE

### (Arizona Registered Trademark Infringement)

70.    Bloom repeats and realleges paragraphs 1 through 69 hereof, as if fully set forth herein.

71.    Arizona law prohibits the use of a registered mark or a mark similar to it, in connection with any goods or services or any container for goods in any manner that is likely to cause confusion, mistake, or deception about the origin, sponsorship, or approval of the goods, services, or commercial activities by the owner of the registered mark. *See* A.R.S. § 44-1451.

72.    Arizona law prohibits the misappropriation of trademarks and the use of any registered mark in a manner "that is likely to cause confusion, cause a mistake or deceive a person" as to the identity of an entity or person. *See* A.R.S. § 44-1451(A)(1).

73.    Where such confusion exists, the question in litigation becomes whether the trademark has previously come to indicate the plaintiff's business. *See Taylor v. Quebedeaux*, 126 Ariz. 515, 516 (1980); *see also Skydive Arizona, Inc. v. Hogue*, 238 Ariz. 357, 366 (App. 2015) ("The universal test [for unfair competition] is whether the public is likely to be deceived").

74.     The BLOOM Marks have exclusively indicated the business of Bloom in Arizona since 2013.

75.     Defendants' commercial use of the Infringing Mark for cannabis products in Arizona constitutes the unlawful acts of trademark infringement, initial interest confusion, false advertising, palming off, and/or misappropriation.

76.     Defendants' commercial use of the Infringing Mark for cannabis products in Arizona is likely to deceive consumers into believing that Defendants' product is actually the product that Bloom offers for sale.

77.     Defendants' commercial use of the Infringing Mark for cannabis products in Arizona is the effective equivalent of making an active misrepresentation to the Arizona market as to the source of the product.

78.     Defendants' commercial use of the Infringing Mark for cannabis products in Arizona constitutes an attempt to mislead consumers into believing that Defendants' product is actually the product of its better-known competitor, Bloom.

79.     Defendants' commercial use of the Infringing Mark for cannabis products in Arizona is an attempt to misappropriate and capitalize upon the goodwill associated with Bloom's BLOOM Marks for cannabis products.

80.     These facts indicate the existence of marketplace confusion, consumer deception, and the false impression in the Arizona cannabis market that two competing but identically-named products are in fact the same, or come from the same source, manufacturer, or origin.

81.     Thus, Defendants' use of the Infringing Mark in Arizona infringes on Bloom's rights and leads to reasonable consumer confusion.

82.     Defendants' continued use of the Infringing Mark for cannabis products in Arizona after its receipt of the January 19 letter demonstrates that Defendants engaged in this conduct with knowledge that their use infringes upon Bloom's trademark.

83.     As a direct and proximate result of Defendants' infringement of Bloom's BLOOM Marks, use of the Infringing Mark, and unfair competition, all in Arizona, Bloom has suffered damages in an amount to be determined at trial.

## COUNT TWO

### (Arizona Common Law Trademark Infringement)

84.     Bloom repeats and realleges paragraphs 1 through 83 hereof, as if fully set forth herein.

85.     Bloom is the rightful owner of the BLOOM Mark and the BLOOM Family of Marks.

86.     Defendants' unauthorized use in commerce of the Infringing Mark in Arizona as alleged herein is likely to confuse consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods, and is likely to cause consumers to believe, contrary to fact, that Defendants' cannabis products are sold, authorized, endorsed, or sponsored by Bloom, or that Defendants are in some way affiliated with or sponsored by Bloom.

87.     Defendants' conduct therefore constitutes trademark infringement in violation of A.R.S. § 44-1452.

## COUNT THREE

### (Unfair Competition)

88.     Bloom repeats and realleges paragraphs 1 through 87 hereof, as if fully set forth herein.

89.     The misuse of a trademark in a way that leads to deception, mistake, or marketplace confusion gives rise to a claim of Unfair Competition. *See Taylor v. Quebedeaux*, 126 Ariz. 515, 516 (1980); *see also Skydive Arizona, Inc. v. Hogue*, 238 Ariz. 357, 366 (App. 2015) ("The universal test [for unfair competition] is whether the public is likely to be deceived").

90.     Where such confusion exists, the question in litigation becomes whether the trademark has previously come to indicate Bloom's business. *Id.*

91.     The BLOOM Marks have exclusively indicated the business of Bloom in Arizona since 2013.

92.     Defendants' commercial use of the Infringing Mark for cannabis products in Arizona constitutes the unlawful act of trademark infringement, initial interest confusion, false advertising, palming off, and/or misappropriation.

93.     Defendants' commercial use of the Infringing Mark for cannabis products in Arizona is likely to deceive consumers into believing that Defendants' products are actually products that Bloom manufactures and offers for sale.

94.     Defendants' commercial use of the Infringing Mark for cannabis products in Arizona is the effective equivalent of making an active misrepresentation as to the source of the products.

95.     Defendants' commercial use of the Infringing Mark for cannabis products in Arizona constitutes an attempt to mislead consumers into believing that Defendants' products are actually the products of its better-known competitor, Bloom.

96.     Defendants' commercial use of the Infringing Mark for cannabis products in Arizona is an attempt to misappropriate and capitalize upon the goodwill associated with Bloom's BLOOM Marks for cannabis products.

97.     These facts indicate the existence of marketplace confusion and consumer deception in Arizona and the false impression among the public that two competing but identically-named products are in fact the same, or come from the same source, manufacturer, or origin.

98.     Thus, Defendants' use of the Infringing Mark in Arizona infringes on Bloom's rights and leads to reasonable (if not strategic and intentional) consumer confusion.

99.     As a direct and proximate result of Defendants' infringement of Bloom's BLOOM Marks, use of the Infringing Mark, and unfair competition, all in Arizona, Bloom has suffered damages in an amount to be determined at trial.

# PRAYER FOR RELIEF

**WHEREFORE** Bloom prays for judgment and orders against Defendants as follows:

A.   Compensatory damages in an amount to be determined at trial;

B.   Consequential damages in an amount to be determined at trial;

C.   Defendants' profits pursuant to A.R.S. § 44-1451(B)(2)(a);

D.   Plaintiff's damages pursuant to A.R.S. § 44-1451(B)(2)(b);

E.   Plaintiff's costs pursuant to A.R.S. § 44-1451(B)(2)(c);

F.   Defendants' profits, Plaintiff's damages, Plaintiff's reasonable attorneys' fees, and Plaintiff's costs pursuant to A.R.S. § 44-1452;

G.   Plaintiff's reasonable attorneys' fees;

H.   Plaintiff's costs pursuant to A.R.S. §§ 12-341 and/or 12-1840;

I.   Granting an injunction preliminarily and permanently enjoining the Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

   i.   Manufacturing, distributing/providing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute, provide, sell, market, advertise or promote cannabis products bearing the mark BLOOM or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's BLOOM Marks in Arizona;

   ii.   Engaging in any activity that infringes Plaintiff's rights in its BLOOM Marks in Arizona;

   iii.   Engaging in any activity constituting unfair competition with Plaintiff in Arizona;

iv. Making or displaying any statement, representation, or depiction that is likely to lead the Arizona public or trade to believe that (i) Defendants' goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or (ii) Plaintiff's goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendants;

v.  Using or authorizing any third party to use in connection with any business or goods, any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff in Arizona or tend to do so;

vi.  Registering or applying to register in Arizona any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the mark BLOOM or any other mark that infringes or is likely to be confused with Plaintiff's BLOOM Marks, or any goods or services of Plaintiff, or Plaintiff as their source, all in Arizona; and

vii. Aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (g).

J.    Granting such other and further relief as the Court may deem proper to prevent the Arizona public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's goods;

K.      Directing Defendants to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating the mark BLOOM or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's BLOOM Marks, including the Infringing Mark, in Arizona, and to direct all distributors, retailers, wholesalers, and other individuals and establishments located in Arizona that distribute, advertise, promote, sell, or offer for sale Defendants' goods or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials featuring or bearing the mark BLOOM or any other mark, including the Infringing Mark, that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Plaintiff's BLOOM Marks, and to immediately remove them from public access and view;

L.      Pursuant to A.R.S. § 44-1451(B)(5), cancellation or transfer of any and all of Defendants' registrations that infringe upon Plaintiff's registered trademarks, including the Infringing Mark;

M.      Pursuant to A.R.S. § 44-1451(B)(5), an order commanding that any reproductions, copies, counterfeits, or colorable imitations of Plaintiff's registered trademarks in Defendants' possession or under Defendants' control, including the Infringing Mark, be destroyed or delivered for destruction;

N.      For interest on the foregoing amounts at the maximum rate permitted by A.R.S. § 44-1201; and

O.      For such other and further relief as this Court deems just and proper.

1    **RESPECTFULLY SUBMITTED** this 2nd day of July, 2021.

2                      **MAY, POTENZA, BARAN & GILLESPIE, P.C.**

3                      /s/ *Jason M. Covault*
                      Jason M. Covault
4                      Jesse R. Callahan
                      Michelle L. Mozdzen
5                      *Attorneys for Plaintiff*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 2, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Robert A. Mandel<br>ZUBER LAWLER, LLP<br>2415 E. Camelback Rd., Ste. 700<br>Phoenix, AZ 85016<br>Tel: (602) 610-1944<br>Fax: (213) 596-5621<br>Email: rmandel@zuberlawler.com<br>Email: tdancer@zuberlawler.com<br>*Attorneys for Defendant*<br>CAPNA INTELLECTUAL, INC. | David W. Williams<br>DAVIS MILES MCGUIRE GARDNER PLLC<br>40 E. Rio Salado Pkwy., Ste. 425<br>Tempe, AZ 85281<br>Tel: (480) 344-4047<br>Fax: (480-733-3748<br>Email: dwilliams@davismiles.com<br>*Attorneys for Defendant*<br>*TIERRA GROW MANAGEMENT,*<br>*LLC* |

*/s/ Anne Finch*

19

**VERIFICATION**

I, L. Edward Judice, general counsel for Plaintiff Bloom Master Fund I, LLC, hereby declare under penalty of perjury that I have read the foregoing Verified First Amended Complaint, know the contents thereof, and that the allegations made therein are true and correct, except those made under information and belief, which I believe to be true.

Dated this __1st__ day of July, 2021.

_____
L. Edward Judice

17

**EXHIBIT 1**







**EXHIBIT 2**

**From:** Quinn Goldsberry <quinn.goldsberry@medmen.com>
**Date:** May 21, 2021 at 3:41:35 PM MST
**To:** ed@infinitebloom.com
**Subject: Bloom Cartridges**

Ed, I noticed the Bloom vape pens are for sale now on Leaflink.  Is this you wholesale product?  Have your rep reach out to discuss.


Best,
Quinn


**Quinn Goldsberry**
*Sales Manager*
*P: 480-452-5652*



MedMen.com

NOTICE: This message is intended only for the named recipient and may contain confidential, proprietary and/or legally privileged information. Any dissemination, distribution, or copying of this information is strictly prohibited. If you have received this message in error, please advise the sender by reply email, and delete this message and any attachments immediately.

**From:** Vartan Victor Arabyan <[vartan@oxhn.com](mailto:vartan@oxhn.com)>
**Date:** May 27, 2021 at 1:42:20 PM MST
**To:** [ed@infinitebloom.com](mailto:ed@infinitebloom.com)
**Subject: We are carrying your product!**

Hey Ed,

I was at our dispensary and found out we are carrying your product!



**EXHIBIT 3**

MICHELLE L. MOZDZEN
ATTORNEY AT LAW

201 North Central Avenue
22nd Floor
Phoenix, Arizona 85004-0608
Main Line:  602-252-1900
Facsimile:  602-252-1114
mmozdzen@maypotenza.com
www.maypotenza.com

MAY
POTENZA
BARAN &
GILLESPIE

January, 19, 2021

**SENT VIA U.S. FIRST CLASS MAIL**

**Capna Intellectual**
15021 Ventura Blvd. #512
Sherman Oaks, CA 91403

**Michael John Arensdorf,
Statutory Agent**
18275 Meadow Song Way
Corral De Tierra, CA 93908

**Tierra Grow Management, LLC**
5740 E. Dixeleta Dr.
Cave Creek, AZ 85331

**DG Service Corp,
Statutory Agent**
40 E. Rio Salado Pkwy, Ste. 425
Tempe, AZ 85281

        *Re:   Infringement of BLOOM trademark*

To Whom it May Concern:

        This law firm has been retained to represent Bloom Master Fund I, LLC, a Delaware limited liability company operating in Arizona, and its related affiliates ("Bloom"), in connection with a trademark infringement claim against Capna Intellectual, a California corporation ("Capna Intellectual") and Tierra Grow Management, LLC, an Arizona limited liability company ("Tierra Grow"). The purpose of this letter is to inform you of the relevant facts and law and determine whether the parties may resolve this issue without formal legal action. In brief, the facts are as follows.

Capna Intellectual
Tierra Grow Management, LLC
January 19, 2021
Page 2

## FACTUAL BACKGROUND

Bloom and its parents, subsidiaries, and affiliated entities, own, manage, and operate several medical marijuana dispensaries throughout Arizona. After its formation in 2013, Bloom began producing and selling cannabis products using the trademark BLOOM at its dispensaries. Over the following years, Bloom has used the BLOOM name not only for the name of its dispensaries located throughout Arizona, but it uses the BLOOM name to market and advertise its cannabis and other cannabis products sold at its dispensaries.

Bloom has expended a substantial amount of time and money in the development and promotion of the BLOOM mark, and it has established a valuable reputation in connection therewith. The public has come to recognize the BLOOM mark and now associates them with Bloom and its associated dispensaries and cannabis products.  As a result, the BLOOM mark has become distinctive of Bloom's goods and services.

The specific mark at issue here is BLOOM, which Bloom began using in commerce since its inception in 2013. Bloom uses the mark in connection with medical marijuana products, including cannabis concentrates, cartridges, and oils, and places the mark on product, labeling, packaging, and informational and marketing materials. An example of Bloom's product bearing the BLOOM mark is enclosed herewith as <u>Exhibit A</u>. As a result of Bloom's extensive history and use of the BLOOM mark in Arizona, Bloom is the exclusive owner of this mark, including all legal rights and goodwill associated therewith.

It has recently come to our attention that Capna Intellectual and Tierra Grow intend to begin the manufacture and sale of cannabis products under the trademark BLOOM BRANDS.[1] To date, neither Capna Intellectual nor Tierra Grow use the BLOOM mark, or any substantially similar mark, in Arizona.

---

[1] https://www.prnewswire.com/news-releases/bloom-brands-is-launching-strain-focused-cannabis-vapes-just-in-time-for-arizonas-recreational-market-301175676.html

Capna Intellectual
Tierra Grow Management, LLC
January 19, 2021
Page 3

## LEGAL ANALYSIS

In determining whether the use of particular mark constitutes infringement, Arizona courts use the factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). The relevant factors include the strength of the marks, the proximity of the goods or services, the similarity of the marks, evidence of actual consumer confusion, the marketing channels employed by each party, the types of goods and the degree of care likely to be exercised by the purchaser, the defendant's intent in selecting the mark, and the likelihood of expansion of the parties' product lines. *Id.* at 348-49. The core issue is whether the defendant's use of the mark is likely to cause a reasonable consumer to be confused about the manufacturer of a particular product or the provider of a particular service. *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007). If the answer is yes, then such use constitutes infringement for which a plaintiff may seek legal remedies, including an award of monetary damages. *Id.* Each of these factors is analyzed below.

1.      Strength of the Marks.

Bloom has been using the BLOOM mark in Arizona since its formation in 2013. It has multiple dispensaries throughout Arizona, including dispensaries in Phoenix, Peoria, Tucson, and Sedona. By comparison, Capna Intellectual and Tierra Grow have not used the BLOOM mark in Arizona. Consequently, Bloom has both priority of use and the stronger mark.

2.      Proximity of Goods or Services.

The more similar the products are, the more likely a court is to find infringement. *Id.* In this case the products are identical: both are for the manufacture and sale of cannabis and cannabis products.

3.      Similarity of the Marks.

The similarity of the marks "is tested on three levels: sight, sound, and meaning." *Sleekcraft*, 599 F.2d at 351. Here, the word BLOOM and BLOOM is the same, and it is axiomatic that the sound and meaning are also the same.

Capna Intellectual
Tierra Grow Management, LLC
January 19, 2021
Page 4

Notwithstanding any minor differences in packaging, a court would likely find that these marks are extremely similar.

4.      Evidence of Consumer Confusion.

Because Capna Intellectual and Tierra Grow do not currently use the BLOOM mark in Arizona, Bloom does not yet know to what extent the public has actually been or will be confused. However, given the similarities between these marks, products, packaging, and locations in which these products are sold, it seems obvious that actual confusion will occur in the Arizona market.

5.      Marketing Channels.

Both parties advertise their products online, in medical marijuana dispensaries, and through social media accounts. Thus, a consumer looking for one party's brand in these places could easily find the other party's brand and mistakenly believe that its products were in fact produced by the other.

6.      Degree of Care Exercised by Consumers.

Because medical marijuana, and soon-to-be recreational use, is a relatively recent development in Arizona, and because marijuana remains illegal under federal law, there are not yet many well-known brands either serving as a dispensary or selling cannabis products in Arizona dispensaries. As a result, a consumer who sees the word "Bloom" for a marijuana dispensary or on packaging for cannabis products may not know that the BLOOM mark does not refer to the same company or brand. This creates a very high likelihood that consumers will mistakenly believe that Capna Intellectual's and Tierra Grow's products using the BLOOM mark are actually produced by Bloom, or at the very least are affiliated, sponsored, licensed, or otherwise associated with Bloom.

7.      Intent in Selection of Mark.

Bloom does not know Capna Intellectual's and Tierra Grow's intent in selecting the mark and therefore takes no position on that factor at this time.

Capna Intellectual
Tierra Grow Management, LLC
January 19, 2021
Page 5

8.    Likelihood of Product Line Expansion.

Bloom, Capna Intellectual, and Tierra Grow operate in the exact same market: they manufacture, market, distribute, and sell cannabis products in medical marijuana dispensaries in the State of Arizona. The products and markets overlap.

9.    Legal Conclusion.

When one considers all of these factors, they can arrive at only one conclusion: Capna Intellectual's and Tierra Grow's use of the BLOOM mark constitutes trademark infringement. The marks as used in the cannabis industry are nearly identical, they are advertised in the same channels, and they are used in Arizona dispensaries. As a result, it is extremely likely that the public will be confused as to the origin of Capna Intellectual's and Tierra Grow's product. And while Bloom has no reason to doubt that Capna Intellectual and Tierra Grow intend to provide its customers with high-quality products, Bloom cannot afford to take the risk that consumers will confuse their products with Bloom's products and services.

## PROPOSED RESOLUTION

Under Arizona law, Bloom has the legal right to seek preliminary and permanent injunctive relief, monetary damages, treble damages, forfeiture of Capna Intellectual's and Tierra Grow's profits, attorneys' fees and costs (which can quickly become significant), corrective advertising damages, and/or statutory damages. However, Bloom has no particular desire to litigate this dispute, and would prefer to resolve it quickly, amicably, and without payment of money.

Based on the article attached hereto as <u>Exhibit B</u>, it appears that neither Capna Intellectual nor Tierra Grow has used this mark within Arizona. As a result, Capna Intellectual and Tierra Grow should be able to select a different mark to use in Arizona before the end of January 2021. In light thereof, and in order to facilitate an amicable resolution, this office must receive unequivocal written confirmation of the following no later than **5:00 p.m. Mountain Standard Time on January 29, 2021**:

Capna Intellectual
Tierra Grow Management, LLC
January 19, 2021
Page 6

1. Capna Intellectual and Tierra Grow will immediately cease and desist any and all use of any mark that associates BLOOM with the production or sale of cannabis or cannabis products in Arizona;

2. Capna Intellectual and Tierra Grow will not use any mark that associates BLOOM with the sale of cannabis at any point in the future in Arizona;

3. Capna Intellectual and Tierra Grow is not using, and will not use at any point in the future, any of Bloom's other trademarks, or anything confusingly similar thereto, in Arizona or as otherwise applicable; and

4. Capna Intellectual and Tierra Grow will surrender or destroy any infringing products or packaging in its possession, or in the alternative, will promptly repackage its products such that neither its products or their packaging bear the BLOOM mark, or anything confusingly similar thereto, in Arizona.

If all of the foregoing items are received by the deadline stated above, Bloom Master Fund does not intend to take further action on this matter. And, so long as Capna Intellectual and Tierra Grow do not use the "Bloom" mark in connection with the manufacture and sale of cannabis in Arizona, Bloom Master Fund does not intend to take action thereon either. That said, Bloom Master Fund encourages Capna Intellectual and Tierra Grow to take care to use its trade names in a way that makes it clear to consumers that Capna Intellectual and Tierra Grow are not affiliated in any way with Bloom Master Fund or the "Bloom" marks.

On the other hand, if Capna Intellectual and/or Tierra Grow declines to cooperate with this attempt to reach a reasonable resolution, it will be clear that Bloom has no choice but to file a lawsuit to protect its legal rights. If that happens, Bloom will seek the injunctive relief, damages, penalties, costs, and fees set forth above, as well as interest at the maximum rate permitted by law. I continue to hope we can avoid that.

Capna Intellectual
Tierra Grow Management, LLC
January 19, 2021
Page 7

     This letter is being sent in a good faith attempt to resolve this situation without judicial intervention, and nothing herein should be construed as a waiver, relinquishment, or election of rights or remedies by Bloom, all of which are expressly reserved. I look forward to your written response. Please feel free to contact me with any questions or concerns.

     Sincerely,

     **MAY POTENZA BARAN & GILLESPIE, P.C.**

     Michelle L. Mozdzen

Enclosures:
1. Exhibit A – BLOOM mark
2. Exhibit B – PR News

Cc:
1. Client (via email only)
2. File

# EXHIBIT A





# EXHIBIT B

# BLOOM BRANDS is Launching Strain-Focused Cannabis Vapes Just in Time for Arizona's Recreational Market

BLOOM strives to make every day a good day through tasteful experiences for cannabis consumers globally

NEWS PROVIDED BY
**Capna Intellectual →**
Nov 18, 2020, 07:00 ET

LOS ANGELES, Nov. 18, 2020 /PRNewswire/ -- Capna Intellectual, the CPG company behind one of the largest multi-state cannabis brands, BLOOM BRANDS, announced today their partnership with Tierra Grow to bring BLOOM's acclaimed vape line to Arizona in January 2021. Arizona will be the 6th state where the company is launching its products through brand licensing deals.

"Arizona is an experienced medical market with seasoned cannabis consumers. They expect vape products to deliver strain-specific effects and flavors akin to the flower. BLOOM delivers these complex strain profiles in an authentic and accessible way. Our vape strains are some of the best-reviewed and most successful in the market today. We're confident we can become Arizona's new favorite vape brand, and we're looking forward to joining the cannabis community there," said Casey Ly, Chief Revenue Officer of Capna Intellectual.

Tierra Grow, a rising cannabis producer and manufacturer with over five years of experience is known for their superior flower and compliant operating practices. Both Capna Intellectual and Tierra Grow have excelled in the medical market and share core product values, establishing a strong partnership predicted to thrive in Arizona's new recreational market.

"We have been exploring opportunities to expand our territories and had our eyes on Arizona for quite some time. Now, Arizona's healthy medical market is preparing to transform into recreational in 2021, and Tierra Grow is in an excellent position for the transition. Just as Capna, the company has been developing their craft for years, and we trust that this partnership will support AZ consumers looking for a consistent, authentic cannabis experience." said Vitaly Mekk, CEO at Capna Intellectual.

BLOOM's unique position within the industry allows the brand to consistently deliver the best-tasting cannabis products unrivaled in effects and overall experience. Capna Intellectual will bring four classic BLOOM Vape strains and three BLOOM Live strains in half and full grams to AZ dispensaries starting January 2021.

To learn more about BLOOM BRANDS, visit https://thebloombrands.com/.

**About Capna Intellectual**

Based in Los Angeles, Capna Intellectual specializes in developing consumer packaged goods for the cannabis market. Capna Intellectual is best known for creating the Bloom Brand, sold in California, Nevada, Washington, New Mexico, and Oklahoma. Since 2015, Capna Intellectual's team has driven product innovation while implementing the strictest operating procedures to ensure compliance, consistency and quality.

**About Tierra Grow**

Based out of Phoenix, Tierra Grow uses innovative techniques to ensure we grow the highest quality flower for Arizona Medical Marijuana patients. Our mission has always been to cultivate the best possible Cannabis on a large-scale. Tierra Grow not only serves the Arizona community through it's premium flower but also serves as a foundation to our sister companies, Core Concentrates and Mockingbird Botanicals, by supplying premium seed to sale Cannabis for their products as well.

For media inquiries or interviews, please contact:

Cristina Burlacu, Capna Intellectual

cristina@thebloombrand.com

For investor inquiries, please contact:

Casey Ly, Capna Intellectual

casey@thebloombrand.com

SOURCE Capna Intellectual

# EXHIBIT 4



# EXHIBIT 5



Sunday
Goods

The Health Center of Cochise, Inc. dba Sunday
Goods
1616 E. Glendale Ave. Phoenix, AZ 85020

DRC: 00000070DCBD00783295

**RECEIPT # O6FEDO**
Order Completed: 07/01/2021 1:36pm

| Qty | Name | Price |
|---|---|---|
| 1 | BLOOM KING LOUIS XIII * Original Price: $40.00 | $40.00 |
| 1 | BLOOM MAUI WOWIE * Original Price: $40.00 | $40.00 |
| 1 | BLOOM PINEAPPLE EXPRESS * Original Price: $40.00 | $40.00 |

| | |
|---|---|
| Original Price: | $120.00 |
| Total Discounts: | $0.00 |
| Subtotal: | $120.00 |
| AZ Excise Tax: | $19.20 |
| Sales Tax: | $10.32 |
| **Total:** | **$149.52** |

| | |
|---|---|
| Cash: | $150.00 |
| Total Paid: | $150.00 |
| **CHANGE:** | **$0.48** |

Consulted by: KARLIE
ON CASH DRAWER 3
Order Completed: 07/01/2021 1:36pm

Thank you for choosing Sunday Goods!

O6FEDO

TREE

**EXHIBIT 6**



## Sunday Goods

The Health Center of Cochise, Inc. dba Sunday Goods
1816 E. Glendale Ave. Phoenix, AZ 85020

DRC: 00000070DCBD007B3295

**RECEIPT # O6FEDO**
Order Completed: 07/01/2021 1:36pm

| Qty. | Name | Price |
|---|---|---|
| 1 | BLOOM KING LOUIS XIII | $40.00 |
| | * Original Price: $40.00 | |
| 1 | BLOOM MAUI WOWIE | $40.00 |
| | * Original Price: $40.00 | |
| 1 | BLOOM PINEAPPLE EXPRESS | $40.00 |
| | * Original Price: $40.00 | |

| | |
|---|---|
| Original Price: | $120.00 |
| Total Discounts: | $0.00 |
| Subtotal: | $120.00 |
| AZ Excise Tax: | $19.20 |
| Sales Tax: | $10.32 |
| **Total:** | **$149.52** |

| | |
|---|---|
| Cash: | $150.00 |
| Total Paid: | $150.00 |
| **CHANGE:** | **$0.48** |

Consulted by: KARLIE
ON CASH DRAWER 3
Order Completed: 07/01/2021 1:36pm

Thank you for choosing Sunday Goods!



O6FEDO

POWERED BY
TREEZ



**EXHIBIT 7**



# EXHIBIT 8









**EXHIBIT 9**



